## 53305. BILBO et al. v. THE STATE.

SMITH, Judge.

The appellants were convicted of the offense of conspiracy to commit the crime of communicating gambling information on the basis of evidence obtained via a court-ordered telephone wiretap. Their appeal, enumerating several errors, contends that their motion to suppress the evidence from intercepted communications was improperly overruled. We agree, and the conviction is reversed.

Pursuant to an application submitted under the name of the Attorney General of Georgia, the Superior Court of Carroll County issued an investigation warrant authorizing electronic surveillance of a certain telephone line in Carroll County which allegedly was being used to communicate gambling information. The appellants were indicted for conspiracy to communicate gambling information on the basis of intercepted conversations in which they placed calls to and received calls from the monitored telephone and relayed or received gambling information. After the motion to suppress was overruled, the appellants proceeded to trial without a jury and were convicted.

1. Although the investigation warrant was obtained under the provisions of Code § 26-3004, it is settled that a wiretap must also be measured against the standards set out in 18 USCA §§ 2510—2520, which are part of the Omnibus Crime Control and Safe Streets Act of 1968. See *Cross v. State,* 225 Ga. 760 (2) (171 SE2d 507). A fundamental underpinning of the federal statute is found in 18 USCA § 2518 (1) (c) and § 2518 (3) (c), which provide that one of two circumstances must exist before a wiretap order will be authorized: (1) normal investigative procedures have been employed and have failed, or (2)

normal investigative procedures have not been tried, but if they were tried they probably would not succeed or else they would be too dangerous. The application for a wiretap order must show the existence of one of these circumstances before the order can be issued. The Supreme Court in *Lawson v. State,* 236 Ga. 770 (225 SE2d 258), faced the issue of whether allegedly stereotyped recitals may fulfill these requirements. It held the application sufficient because, even though the officer's affidavit in support of the application contained the allegedly stereotyped recitals, it also detailed a surveillance which had been conducted for two weeks prior to the application and which had proved fruitless. Whether the affidavit actually contained stereotyped recitals and, if so, whether, standing alone, they would justify a wiretap order, was not discussed in that case, but the issue is squarely presented here.

Agent Max Smart of the GBI testified that in applications for wiretap orders the GBI agents use forms which are prepared for the purpose. The appellants introduced into evidence the affidavits which Mr. Smart used to obtain the wiretap authorization in *Lawson.* A comparison of that affidavit to the affidavit used to obtain the order in the instant case reveals remarkable similarities. For example, comparison of the section in each entitled "Normal Investigative Procedures" shows that except for the names of the principals and the nomenclature of the crime—bookmaking here, lottery in *Lawson*—the affidavits are essentially identical, even to the point of containing the same syntax errors and the same averments as to what confidential informants have told the affiant. Agent Meeks' affidavit in this case states: "Informant has told Affiant, who has previously stated in the affidavit that subjects Dillard Allen Buchanan and Homer Jerry Buchanan are operating a bookmaking organization and that they are not the only two individuals that are involved in the bookmaking operation. This indicates there are other individuals who are involved in this bookmaking operation." The corresponding section of Agent Smart's affidavit in *Lawson* states: "Informant has told affiant, who has previously stated in the affidavit that subjects [X] and [Y]

are operating a lottery organization and that they are not the only two individuals that are involved in the lottery operation. This indicates there are other individuals who are involved in this lottery operation." The remaining parts of the affidavits are equally parallel, except that their descriptions of prior surveillance differ.

The question we must answer is whether this affidavit suffices to show the existence of at least one of the alternative statutory requirements. The clear prescription of 18 USCA § 2518 (3) (c) is that the judge must determine "on the basis of the *facts* submitted by the applicant that . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;. . ." (Emphasis supplied.)

Were normal investigative procedures tried and did they fail? Agent Meeks' affidavit states, "Surveillance, as indicated previously, has been conducted but been unable to furnish sufficient evidence to prosecute and connect all individuals who are involved in this bookmaking organization." (Substitute "lottery" for "bookmaking" and you have a sentence from Smart's affidavit in *Lawson.*) However, Meeks testified that the only surveillance conducted prior to the application was a brief observation of the house where the gambling operation was being conducted. No other surveillance, such as observing the Buchanans and their contacts, was ever attempted. The officers had information as to when and how payoffs were made, but they never attempted to reconnoiter those operations to determine who else was involved. They knew where the gambling records were kept, but they never attempted to obtain a conventional search warrant to seize the records. Thus, the application for the wiretap contained only conclusory statements that normal investigation had failed, and the officer's testimony showed that very little, if any, normal investigative procedures had been attempted.

Since normal investigative procedures were not tried, we turn now to the question whether facts were submitted to the judge from which he could determine that they would have failed if they had been tried. (The state never contended that they would be too dangerous.)

In his affidavit Meeks avers that "because of the secrecy with which said persons conduct such unlawful enterprises other investigative procedures reasonably appear unlikely to succeed." The affidavit goes on to set out the standardized recital of why gambling conspiracies are hard to crack, a recital which is used in all GBI affidavits to obtain wiretaps in gambling cases.

The federal statute envisions a judge considering the unique facts of each case to reach a case-by-case determination of whether a wiretap is authorized under the statute's terms. Rightfully, the law does not make it easy for a law enforcement officer to obtain authority for a wiretap; nor, on the other hand, does it make it impossible. It simply requires a showing that customary investigative practices would not suffice, in the instant case, to expose the crime. *Lawson,* p. 771.

Knowing as we do now that GBI agents repeatedly use this standard form language to show that traditional investigative techniques will not expose the full extent of the gambling operation, our condonation of that affidavit as fulfilling the statute's requirements in this respect, without requiring any exposition of why the techniques will not work in the particular case then being investigated, would amount to a judicial decree that traditional investigation will never suffice to expose gambling conspiracies. For this court so to decree would erase one of the major obstacles to obtaining a wiretap authorization, and it would subvert the clear legislative intent to have each case carefully examined on its own merits. Forms and "boilerplate" constructions may have their place in the world of security agreements, deeds, contracts, and even indictments, but they have no place where circumstances must be presented to a magistrate or judge for independent determinations of probable cause on a case-by-case basis.

We therefore conclude the stereotyped recital is legally insufficient in this case, and for that reason the motion to suppress should have been granted.

Our stance on this issue is not without precedent. In United States v. Kerrigan, 514 F2d 35, 38 (9th Cir. 1975), a sufficient factual narrative saved the affidavit from insufficiency:

"We agree with appellants that the boilerplate recitation of the difficulties of gathering usable evidence in bookmaking prosecutions is not a sufficient basis for granting a wiretap order. To hold otherwise would make § 2518 (1) (c) and (3) (c) mere formalities in bookmaking cases. However, in this case, agents had engaged in investigation for over three months, including physical surveillance of the suspects, had reasonably established that their informants would not testify, and had reason to believe that the other evidence thus far produced would not support a conviction. Further, physical surveillance of the residence identified by informants as housing the four 'front office' telephones disclosed that it was fronted by a 5-foot high chain link fence topped by 3-stranded barb wire and had two large dogs patrolling the area between house and fence. Thus the government demonstrated a factual basis for its concern that the suspects might have time and inclination to destroy evidence . in case of search."

In United States v. Kalustian, 529 F2d 585, 589 (9th Cir. 1976), there were no such annexed facts and the affidavit, which was remarkably similar to Meeks' affidavit in this case, was insufficient:

"The affidavit does not enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case. In effect the Government's position is that all gambling conspiracies are tough to crack, so the Government need show only the probability that illegal gambling is afoot to justify electronic surveillance. Title III does not support that view.

" 'Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. *These procedures were not to be routinely employed as the initial step in criminal investigation.* Rather, the applicant must state that and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if

tried or to be too dangerous.' United States v. Giordano [416 U.S. 505 (94 SC 1820, 40 LE2d 341)]."

The distinction between the two federal cases above is the same as the distinction between *Lawson,* supra, and the present case. In *Lawson,* the Supreme Court held that sufficient facts had been presented in the affidavit in addition to the standard language, the affidavit showing "in detail a physical surveillance of the purported gambling establishment and of the defendants over a period of two weeks prior to the issuance of the telephone intercept order." *Lawson,* pp. 770-771. In contrast, the affidavit here shows little more than initial investigation establishing the existence of some lottery activity, and admittedly there had been no investigative activity geared toward discovery of the other parties involved in the lottery operation. The wiretap was obviously sought as a first resort, while the statute authorizes wiretaps, if at all, as a last resort.

2. The appellants contend that even had the investigation warrant been authorized its execution was illegal because there was an unauthorized publication of the intercepted communications when an informant was allowed to participate in monitoring the wiretap. We agree.

Code Ch. 26-30 generally defines and proscribes invasions of privacy. One exception is detailed in Code § 26-3004 which allows *law enforcement officers,* under court supervision, to conduct surveillance as specified. Nothing in Code § 26-3004 allows private individuals to monitor intercepted communications, and § 26-3004 (k) provides that any publication of evidence obtained under the provisions of the statute will render that evidence inadmissible in any criminal prosecution, unless the publication was "necessary and essential" to the prosecution. The state made no showing that the informant's participation in the monitoring was necessary or essential to this prosecution.

Moreover, the investigation warrant issued in this case authorized a surveillance conducted by the "Attorney General and law enforcement officers and Agents under his direction and control permanently or temporarily." The warrant included the following

unequivocal specification: "No person other than said Attorney General of the State of Georgia or a law enforcement officer or Agent under his direction and control permanently or temporarily shall in any manner participate in the employment of the devices, instruments and apparatus used in the execution of this warrant." The state made no showing that the informant fit within any of these categories.

The state has failed to prove that the informant's monitoring of the wiretap was authorized under either the statute or the investigation warrant. Not only does Code § 26-3004 (k) render inadmissible any evidence published without authorization, Code § 26-3007 prohibits the introduction of any "evidence obtained in a manner which violates any of the provisions of the Chapter." For this reason, it was error to overrule the appellants' motion to suppress the evidence.

3. Without the evidence procured through the wiretap, a conviction of conspiracy to communicate gambling information was not authorized. Therefore, the judgment of conviction must be reversed. The remaining enumerations of error do not require a reversal and need not be dealt with here.

*Judgment reversed. Bell, C. J., concurs. McMurray, J., concurs in the judgment only.*

SUBMITTED JANUARY 19, 1977 — DECIDED JUNE 8, 1977 — REHEARING DENIED JULY 6, 1977 — 

*Herbert Shafer,* for appellants.
*William F. Lee, Jr., District Attorney, Robert H. Sullivan, Assistant District Attorney,* for appellee.