## 56458. PRATER v. THE STATE.

SMITH, Judge.
Tommy Prater was indicted for one count of burglary and two counts of armed robbery in connection with the 1975 burglary of the home of Mr. and Mrs. Odell Edwards and the gunpoint robbery of them therein. Found guilty and sentenced on all three counts, he brings this appeal contesting (1) the use of evidence of other alleged crimes; (2) the trial court's refusal to grant a mistrial following a witness' unrepsonsive interjection of reputation evidence; (3) an allegedly improper question asked by the assistant district attorney; (4) the charge on conspiracy; (5) the

admission of former testimony; (6) the admission of wiretap evidence; and (7) the admission of allegedly tainted in-court and out-of-court identifications. We find no error and affirm.

The Edwards burglary and robbery was one of six very similar crimes which occurred in the same general area of northwest Georgia, northeast Alabama, and southern Tennessee during a one-year period. Because of the similarity of the victims, the items taken, and the methods of operation in these several crimes, the state introduced evidence of Prater's involvement in them. One of the crimes was the robbery of Mrs. Joseph Proctor in Tennessee. Prater and two confederates were charged with the Proctor robbery, and at a commitment hearing in Tennessee one of the accomplices, Bernard Weinthal, offered testimony inculpating Prater. At extradition proceeding in Tennessee held for the purpose of returning Prater to Georgia to be tried in connection with the Edwards burglary, Weinthal again implicated Prater. Prior to this trial, Weinthal died, and his former testimony was offered by the state. The conviction was further supported by evidence gained through a court-ordered wiretap and by the identification of Prater by three eyewitnesses to the Edwards burglary and robbery. Further facts will be set out as necessary in the following discussion.

1. Other alleged crimes. The appellant asserts reversible error resulted from the admission of evidence concerning six robberies not the subject of the instant prosecution, particularly the Proctor robbery. The enumeration is based on a lack of similarity between the independent crimes and the crime for which Prater was being tried. The record amply details sufficient similarities so that proof of each separate crime was relevant to the proof of either motive, plan, scheme, bent of mind, or course of conduct (*Hamilton v. State,* 239 Ga. 72, 75 (235 SE2d 515) (1977)) without being unduly prejudicial. *Tuzman v. State,* 145 Ga. App. 761 (1) (244 SE2d 882) (1978).

2. Impermissible character and reputation evidence. We conclude the trial court did not abuse its discretion in overruling a motion for mistrial following an

unresponsive interjection of extraneous, prejudicial matter by a state witness. "Motions for mistrial are largely in the discretion of the trial judge, especially where the cause of the motion lies in the voluntary remark of a witness not invited by the court or counsel, and, where the jury is properly instructed and the remark is not so flagrantly prejudicial as to violate the fair trial rights of the defendant, the court's discretion will not be overturned." *Holcomb v. State,* 130 Ga. App. 154, 155 (202 SE2d 529) (1973). The appellant contends the remark here was just such a "flagrantly prejudicial" one; we disagree.

The witness, on cross examination, was responding to questioning about when he first talked to state investigators concerning the appellant. At one point, the witness said, "I got together with Mr. Mitchell [the special prosecutor] after, I think, Tommy was locked up . . .No, it was before, because I told Mr. Mitchell I didn't want to be exposed because I was afraid Tommy might have me killed." No objection or motion was there interposed. A few moments later, as this line of inquiry continued, the witness said, ". . . and I told Mr. Mitchell the reason I didn't want to come earlier, before Tommy was locked up, because I was scared Tommy would have me killed. And that's Tommy's reputation having things done." At this point, a motion for mistrial was made and overruled, but the court sternly cautioned the jury to disregard the previous comments. In ruling that the above comments do not mandate the grant of a mistrial, we follow the holdings in *Woods v. State,* 233 Ga. 495 (II) (212 SE2d 322) (1975) (testimony that witness met defendant in prison); *Cross v. State,* 136 Ga. App. 400 (4) (221 SE2d 615) (1975) (testimony that defendant recognized by witness as a "criminal element"); *Frazier v. State,* 141 Ga. App. 205 (233 SE2d 51) (1977) (testimony implying that defendant had confessed); and numerous other cases cited therein.

Our recent decision in *Boyd v. State,* 146 Ga. App. 359 (246 SE2d 396) (1978), is distinguishable. There, the prejudicial, unresponsive remark came from a police officer who was presumed to have known the inadmissible nature of the hearsay, character testimony he interjected. Here, a lay witness offered the remark. Moreover, his

remark followed a previous, similar remark which passed without objection. Thus, the element of prosecutorial culpability present in *Boyd* is lacking here.

3. Alleged improper question. The complained-of question by the assistant district attorney, if improper, was only marginally so, and we do not hesitate to hold that the trial court's immediate cautionary instructions cured any error and obviated any need for a mistrial. E.g., *Truitt v. State,* 146 Ga. App. 231 (246 SE2d 141) (1978).

4. The charge. "Failure to charge in the exact language requested, where the charge given substantially covered the same principles is not error." *Cohran v. State,* 141 Ga. App. 4, 5 (232 SE2d 355) (1977). The enumeration directed toward the charge on conspiracy is without merit.

5. Former testimony. During the trial the state was permitted to prove the testimony of Bernard Weinthal given at two previous judicial proceedings in Tennessee, a commitment hearing against Prater in the Proctor burglary, and an extradition hearing to determine whether Prater should be returned to Georgia to stand trial in the current matter. There is no dispute that Weinthal's former testimony was given under oath, that Prater was represented by counsel at both hearings, that his counsel had the opportunity to, and did in fact, cross examine Weinthal, and that Weinthal died prior to Prater's Georgia trial. Timely objection was made on the dual grounds that Weinthal's former testimony is inadmissible hearsay and that its admission violated Prater's constitutional right to confrontation. We conclude that proof of Weinthal's former testimony is not objectionable on either ground urged.

For purposes of analytical clarity, we emphasize that whether this evidence is admissible as a matter of Georgia evidence law, and whether it is admissible as a matter of federal constitutional law, are two distinct questions. As the Supreme Court said in California v. Green, 399 U. S. 149, 155 (90 SC 1930, 26 LE2d 489) (1970), "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that

the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. [Cits.] The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." It follows that Weinthal's former testimony must clear two hurdles — Georgia evidentiary and federal constitutional — to be properly admissible; we therefore will consider the two issues separately.

A. *Hearsay and the § 38-314 exception.* Any evidence proving the substance of Weinthal's testimony in the previous proceedings would unquestionably be hearsay (Code § 38-301), but we find the former testimony here to fall properly within the exception carved by Code § 38-314 which allows proof of "[t]he testimony of a witness, since deceased, . . . given under oath on a former trial, upon substantially the same issue and between substantially the same parties . . ." The appellant quite accurately has highlighted the differences between the parties and issues in the Tennessee hearings and the parties and issues in the current trial. We candidly admit that the differences here are probably as considerable, or more so, than the differences in any previously decided case allowing former testimony under § 38-314. However, we feel that an enlightened view of § 38-314 supports our conclusion that the parties and issues are substantially the same.

Judicial interpretations of § 38-314 have long emphasized the requirement that the parties and issues need be only *substantially* the same. In *Gavan v. Ellsworth,* 45 Ga. 283, 288 (1872), a witness who had testified at a commitment hearing on an assault-with-intent-to-murder charge was unavailable to testify in a civil action thereafter brought against the same defendant based upon the same incident. Proof of the former testimony at the criminal proceeding was

admitted at the civil trial, and the Supreme Court found no error within the context of § 38-314 even though one of the parties was different — the state prosecuted the criminal case and the victim prosecuted the civil suit. Holding that the parties were "substantially the same," the court noted, "The authorities seem to make the matter turn upon the opportunity for cross examination. This, the defendant, against whom the testimony is now offered, had fully on the commitment trial." The notion of substantiality was expanded in *Atlanta & W. P. R. Co. v. Venable,* 67 Ga. 697, 699 (1881), where the court approved of the *Gavan* rule, noted that the term "substantially" is used in § 38-314 both as to parties and as to issues, and cautioned, "if a narrow construction be put on the qualifying adverb 'substantially' so as to require the identical parties, the force is entirely gone, and that word had as well been omitted."

As the *Gavan* court noted, the purpose for requiring that the former testimony had been received in a proceeding having substantially the same issues and parties is to insure that the party against whom the testimony is now offered had an opporunity adequately to cross examine the witness at the previous proceeding. Hence, the parties and the issues both can properly be viewed as substantially the same wherever the party against whom the former testimony is now offered had the opportunity, at the former trial, to cross examine the witness fully as to the matter in issue at the second trial. See 31A CJS 957, Evidence, § 389.

(1) Were the *parties* substantially the same? The appellant makes much ado about the fact that the prosecuting party in both the commitment hearing and the extradition hearing was the State of Tennessee, while the prosecuting party in the present case was the State of Georgia. Of course, both there and here Prater was the defending party. We do not hesitate to conclude that the parties were substantially the same. We see no greater difference between the two states here than between the state and the civil plaintiff in *Gavan.* And commentators have emphasized that the purpose of the rule is fulfilled if the party against whom the former testimony is offered is the same;

"[M]odern judges who place substance before form [recognize] that it is only the party *against* whom the former testimony is now offered, whose presence as a party in the previous suit is significant. The older decisions which insisted on 'reciprocity' or 'mutuality,' that is, that the party *offering* the former testimony in the present suit must also have been a party in the prior proceeding, seem without any supporting basis in fairness of expediency." McCormick on Evidence p. 618, § 256 (2d Ed., 1972). And, "[I]t is sometimes said that there must be 'reciprocity' or *'mutuality,'* i.e., that former testimony, already cross-examined by B, cannot now be offered by A against B unless B could now have offered it against A. But for this there is not a shadow of justification. The sole question is whether B has had an adequate opportunity by cross-examination to sift this testimony; this, by hypothesis, he has had; and so the rule is satisfied." V. Wigmore on Evidence p. 119, § 1388 (Chadbourn Rev. 1974).

Since Prater was a party in both the Georgia and Tennessee proceedings, and since he had had ample opportunity to cross examine Weinthal in the Tennessee proceedings, we find that the parties were substantially the same within the import of § 38-314. See *Gavan,* supra; *Venable,* supra; *Myrick v. Sievers,* 104 Ga. App. 95 (121 SE2d 185) (1961); *Woodside Storage Co. v. Carr,* 108 Ga. App. 34 (8 a) (132 SE2d 241) (1963); Green, Georgia Law of Evidence § 231 (1957).

(2) Were the *issues* substantially the same? The issues in the three proceedings here are less similar than the parties, but we nevertheless conclude that for § 38-314 purposes they are substantially the same. Again, the emphasis is on whether there is sufficient similarity so that there was previously an adequate opportunity for cross examination. The "requirement of identity of issues, is like the rule about parties, merely a means of fulfilling the policy of securing an adequate opportunity of cross examination . . . [The rule] does not require that all the issues (any more than all the parties) in the two proceedings must be the same, but at most that the issue on which the testimony was offered in the first suit must be the same as the issue upon which it is offered in the

second. Additional issues or differences in regard to issues upon which the former testimony is not offered are of no consequence. Moreover, insistence upon precise identity of issues, which might have some appropriateness if the question were one of res judicata or estoppel by judgment, are out of place with respect to former testimony where the question is not of binding anyone, but merely of the salvaging, for what it may be worth, of the testimony of a witness not now available in person." McCormick § 257, supra.

(a) The Proctor commitment hearing. Testimony given at commitment hearings has often been allowed under § 38-314 at the following trial for the same crimes. E.g., *Robinson v. State,* 68 Ga. 833 (1882); *Hardin v. State,* 107 Ga. 718 (33 SE 700) (1899); *Tanner v. State,* 213 Ga. 820 (102 SE2d 176) (1958); *Littles v. State,* 236 Ga. 651 (224 SE2d 918) (1976). Implicit in each of these cases is the conclusion that the issue of probable cause to suspect the defendant of guilt is substantially the same, for § 38-314 purposes, as the issue of ultimate proof of guilt. Since we have previously decided that proof of Prater's involvement in the Proctor burglary is admissible in the instant trial, we can now hold that Weinthal's testimony from the Proctor commitment hearing is admissible. For insofar as Prater' involvement in the Proctor burglary is a legitimate issue in this case; the Proctor commitment hearing dealt with substantially the same issue.

(b) The extradition hearing. At his hearing to determine whether Prater should be returned to Georgia to stand trial in this case, the limited issues were "(1) whether a crime has been properly charged in the demanding State; (2) whether the fugitive in custody is the person so charged; and (3) whether the fugitive was in the demanding State at the time the crime alleged was committed." *Collins v. Stynchcombe,* 226 Ga. 776 (177 SE2d 682) (1970). Cf. Michigan v. Doran, —— U. S. —— (99 SC 530, 58 LE2d 521) (1978). Weinthal's testimony at the extradition hearing addressed the third of these issues. That testimony was offered at the present trial on precisely the same issue: to prove Prater's whereabouts at the time of the Edwards burglary. As we noted above, the presence of additional issues which may differ is of no

consequence where the issue for which the testimony is offered is the same.

The appellant's brief maintains that "[i]t will take a considerable stretching of the exceptions to the hearsay rule" to allow admission of this former testimony, and we recognize that it may appear, especially to this appellant, that we have gone rather far afield to fit this testimony within the § 38-314 exception. We emphasize, however, that this former testimony bears overwhelming indicia of reliability: it was offered within the solemnity of a judicial proceeding, under oath, subject to cross examination, and it was transcribed. It thus overcomes most of the objections to hearsay testimony. And, especially when viewed in comparison to many of the other types of evidence allowed within the various hearsay exceptions — e. g., res gestae (Code § 38-305), co-conspirator's declarations (Code § 38-306), and dying declarations (Code § 38-307) — this testimony appears unusually reliable.

B. *Confrontation.* We disagree with appellant's assertion that the former testimony violated his Sixth-Amendment right to confrontation. "The decisions of [The United States Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact (has) a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U. S. [149, 161 (90 SC 1930, 26 LE2d 489) (1970).]" Dutton v. Evans, 400 U. S. 74, 89 (91 SC 210, 27 LE2d 213) (1970). As our above discussion shows, we believe that the practical concerns for the validity of the testimony are met in this case. The appellant bases his confrontation argument on Pointer v. Texas, 380 U. S. 400, 407 (85 SC 1065, 13 LE2d 923) (1965), which is factually distinguishable from the present case as evidenced by the court's observation that "[t]he case before us would be quite a different one had [the former testimony] been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." At both the commitment hearing and the

extradition hearing Prater had been represented by counsel who had, and took advantage of, the opportunity to cross examine Weinthal. Further, the Pointer court expressly approved the prior decision of Mattox v. United States, 156 U. S. 237 (15 SC 337, 39 LE 409) (1895), where testimony of a deceased witness who had testified at a former trial was held admissible. We find no federal constitutional problems in the admission of this testimony.

6. Wiretap evidence. The appellant attacks both the sufficiency of the evidence upon which a wiretap order was issued and the sufficiency of procedures for sealing and preserving tape recordings of intercepted conversations.

A. *Sufficiency of the affidavit.* The appellant contends the affidavit filed in support of the application for the wiretap order was insufficient to satisfy either of the alternative standards of 18 USC §§ 2518 (1) (c) and (3) (c); i.e., that (1) normal investigative procedures have been tried and have failed, or (2) normal investigative procedures, if tried, would probably be futile, or else would be too dangerous. The catalogue of previously attempted procedures in this case is at least as substantial and detailed as the listing we found insufficient in *Bilbo v. State,* 142 Ga. App. 716 (236 SE2d 847) (1977), but which the Supreme Court found ample when it reversed us in *State v. Bilbo,* 240 Ga. 601 (242 SE2d 21) (1978). Thus the first of the alternative requirements was fulfilled. And for the second alternative, particularly under the minimal standards enunciated in *State v. Bilbo,* the trial court was authorized to conclude, as it did, that there had been a sufficient showing of the probable ineffectiveness of normal investigative procedures in this case. Either way, issuance of the wiretap order was authorized.

B. *Sealing of the tapes.* Following completion of the wiretap, the judge ordered tape recordings of intercepted conversations to be duplicated by a GBI agent and returned for permanent storage. The evidence authorized a finding that the tapes had been duplicated, sealed, and returned, and that the seal on the tapes had not been broken until the tapes were produced in open court. Thus, the sealing and nondisclosure safeguards imposed by 18

USC § 2518 (8) (a) and Code § 26-3004 (h) do not require suppression of the recordings.

C. To the extent that the recorded conversations dealt with crimes separate from the one for which Prater was on trial, the recordings were nevertheless admissible for the reasons stated in Division 1, supra.

7. In-court and out-of-court identifications. Finally, we find no grounds for reversal in the contention that the trial court erred in refusing to exclude the in-court and out-of-court identifications of appellant by three separate witnesses. The out-of-court identifications, which all were made subsequent to the appellant's indictment, allegedly were the product of impermissibly suggestive line-up procedures conducted when the appellant was without the assistance of counsel. The appellant urges reversal on both due-process and right-to-counsel grounds.

One witness, Mr. Edwards, was told that a court proceeding was to be held in Chattanooga at which some men, who might be connected with the Dalton robberies and who had been arrested in Tennessee, would be present. He was told this by Mitchell, who later became the special prosecutor in this case. Mitchell suggested to Edwards that if he thought he might be able to identify the men who had robbed him at gunpoint, he might attend that court proceeding to see if the men were among the persons present. No identification procedure was arranged, but Edwards did opt to attend. He testified that after he had been there some time, eight or ten men entered and scattered about the room; he immediately recognized two men who had robbed them, and he pointed them out to a deputy sheriff who was present. One was identified as Prater.

Another witness, Stafford, went to Chattanooga under similar circumstances, having been led to believe that he might be able to identify the perpetrators at an extradition hearing to be held there. As he was looking for this hearing, he walked into a crowded room, and there he immediately spotted and recognized two men, one of whom was Prater.

The third witness was Mrs. Edwards who, on her own and Mr. Edwards' initiative, attended an arraignment

proceeding in Whitfield County Superior Court. There, from among a very large group of persons waiting to be arraigned, she immediately and assuredly recognized the same two men.

Each of the above situations is completely devoid of suggestive undercurrents. The two men were never singled out or conspicuously presented in any way. There was no line-up or parading of suspects; indeed, the identifications were accomplished quite apart from any police procedures. We conclude, as the trial court did, that these out-of-court identifications were not line-ups, one-on-one confrontations, or any other officially orchestrated identification procedure to which attach the right-to-counsel considerations of United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967), and its progeny. And we conclude that the circumstances of these identifications were free from impermissible suggestiveness; the great weight of the evidence supports our conclusion. Hence, there is no due-process problem as in Stovall v. Denno, 388 U. S. 293 (87 SC 1967, 18 LE2d 1199) (1967), Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), and similar cases.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

SUBMITTED SEPTEMBER 12, 1978 — DECIDED JANUARY 18, 1979 — REHEARING DENIED FEBRUARY 1, 1979 — 

*Cook & Palmour, Bobby Lee Cook, Bobby Lee Cook, Jr., A. Cecil Palmour,* for appellant.

*Charles A. Pannell, Jr., District Attorney, James E. Bethel, Assistant District Attorney, Erwin Mitchell,* for appellee.