## 35359. CATES v. THE STATE.

JORDAN, Justice.

On January 7, 1978, Warren Nichols was strangled to death. Ten days later his body was discovered, partially frozen with the ligature still applied to his neck. Following an investigation, two suspects were arrested and tried separately. Robert Bellinger was tried first and convicted of murder, robbery and concealing a death. Terry Cates, the appellant in this appeal, was next tried for murder, robbery and concealing a death and was sentenced to life imprisonment for murder plus twelve months for concealing Nichols' death.

Upon his arrest, Bellinger gave a statement to the police to the effect that he and the appellant had arranged a drug deal with the victim, but that the two had discussed "rolling" the victim for his money and not giving him any drugs. The three men drove in the victim's car to a wooded area where they parked and walked into the woods. At this point, Bellinger told the police that the appellant took a rope he had gotten from Bellinger's house and strangled Nichols to death. Then the appellant asked Bellinger to help him cover the body, at which point Bellinger became scared and ran. Bellinger testified to all of this at his own trial held approximately one month before the appellant's trial.

At the appellant's trial, the prosecution offered evidence of appellant's presence with Bellinger and the victim on the day of the murder. There was testimony that appellant had a large amount of money on him the afternoon and evening after the murder. Approximately $900 had been stolen from the victim. The investigating

police officer then testified that the appellant had made a statement upon his arrest that he had ridden in the car with Bellinger and the victim up until the time the car was parked and the three got out, but that he had become scared, at that point, and ran from the scene. Appellant did not testify at his trial and no defense was offered save in rebuttal to the prosecution's witnesses.

Appellant enumerates four errors allegedly committed during his trial. The first two concern the prosecution's attempt to have Bellinger testify against him. Bellinger was called to the stand and asked several questions, which he refused to answer. The trial judge directed him to answer the questions. Bellinger stated that he was exercising his Fifth Amendment rights. Citing *Lively v. State*, 237 Ga. 35 (226 SE2d 581) (1976), the judge warned him that he no longer had a Fifth Amendment privilege since he had testified at his own trial and threatened to hold him in contempt if he continued to refuse to answer. He continued to refuse, and the judge found him in contempt.

The district attorney continued to ask Bellinger questions, the questions becoming leading ones. The defense attorney objected on the ground that he would not have an opportunity to cross examine the witness as to the truth of the matter contained in the district attorney's questions. The judge overruled the objection since there was a chance that the witness might not exercise his Fifth Amendment rights when the defense attorney questioned him. At the conclusion of the state's direct examination of Bellinger, the jury had heard practically the entire content of his testimony at his own trial.

Bellinger was no more responsive to the defense attorney's questions, which were also leading and suggested the defense's theory to the jury. Thereafter, in an effort to put Bellinger's actual testimony at his own trial before the jury, the state called the court reporter at Bellinger's trial to testify that, first, the transcript was unavailable and, second, to relate what Bellinger had said. Defense counsel objected to this witness' testimony on the ground that it did not fit into the exception to the hearsay rule codified at Code Ann. § 38-314 which provides: "The testimony of a witness . . . inaccessible for

any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." This objection was overruled.

1. Appellant relies on *Lingerfelt v. State,* 235 Ga. 139 (218 SE2d 752) (1975) as authority for reversal due to the leading questions propounded to Bellinger on the basis of the denial of his opportunity to cross examine Bellinger as to the truth of the matter contained in the questions asked of him. In *Lingerfelt,*[1] the prosecution called a co-indictee of the defendant on trial to the stand to question him regarding testimony he had given at a prior commitment hearing at which neither the defendant nor his attorney had been present. The co-indictee refused to answer any questions raising his Fifth Amendment privilege. At that point, having convinced the court that the witness was a hostile witness, the prosecuting attorney was allowed to ask leading questions. This court, in reversing Lingerfelt's conviction at that time, held that this procedure denied the defendant his right to confrontation as guaranteed by the Sixth Amendment.

There is a crucial distinction between *Lingerfelt* II and this case, however. An examination of the transcript in *Lingerfelt* II reveals that after the prosecution completed the direct examination of the co-indictee, the defense attorney did not propound his own suggestive leading questions, but merely asked "is there any question that the District Attorney has asked you that you will answer for me other than the answers that you have heretofore given?" Upon being informed that the

---

[1]Lingerfelt was tried three times for the murder of two police officers. The first conviction was reversed on the same issue as that reversed on the second *Lingerfelt* opinion appearing at 235 Ga. 139. *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445) (1973). Finally, Lingerfelt's third conviction was upheld on appeal in *Lingerfelt v. State,* 238 Ga. 355 (233 SE2d 356) (1977). Apparently, the confrontation question was not at issue in *Lingerfelt* III.

witness would continue to invoke his Fifth Amendment privilege, with the exception of one nonleading question, the defense attorney cross examined him no further.

In this case, on the other hand, the defense attorney quite skillfully demonstrated for the jury the inconsistencies in Bellinger's story by asking his own leading questions. In fact, the transcript shows some eight pages of cross examination by appellant's attorney, the questions suggesting answers which would have exculpated appellant. The trial judge admonished Bellinger in front of the jury, directed him to answer the questions and then held him in contempt of court when he refused. In *Lingerfelt* II the witness was within his rights in claiming the 5th Amendment privilege. Here the witness had no such right since he had been previously tried and convicted for his participation in the same crime. *Lively v. State,* supra. At the end of the defense attorney's cross examination, despite Bellinger's refusal to answer, the permissible inference was clear that Bellinger was trying to hide his own guilt rather than place blame on the appellant.

Other circumstances surrounding Bellinger's failure to testify would militate toward a finding of no error in allowing him to be questioned. For example, Bellinger made a statement to the police relating substantially the same story that he testified to at his own trial, with some notable exceptions. This statement was introduced at appellant's trial, and the defense attorney had already been able to demonstrate some of the inconsistencies in Bellinger's story through cross examination of other witnesses before Bellinger was called to the stand. Unlike the defendant in *Lingerfelt* II, supra, appellant had the content of Bellinger's version of the crime available to him and was able to discredit it. We see no error in allowing the prosecuting attorney to ask leading questions of appellant's co-defendant in view of the fact that appellant was afforded the same opportunity.

2. Appellant maintains that allowing the court reporter to testify over objection as to the content of Bellinger's testimony at his own trial was error. Appellant makes a convincing argument that the court reporter should never have been allowed to testify based

on Code Ann. § 38-314 because his trial did not involve substantially the same issue or substantially the same parties. He contends that the issue in the first trial, between Bellinger and the state, was the guilt or innocence of Bellinger. The issue in his trial is his own guilt or innocence. First of all, one justification for this exception to the hearsay rule is that the party objecting had adequate opportunity to cross examine the witness at the previous trial. *Prater v. State,* 148 Ga. App. 831 (253 SE2d 223) (1979) citing *Gavan v. Ellsworth,* 45 Ga. 283 (1872). This appellant had no opportunity to cross examine Bellinger at Bellinger's trial. According to *Prater,* this is the central issue in determining whether Code Ann. § 38-314 applies, and since there is no dispute that no such opportunity existed, the inquiry ends at that point.

However, the content of Bellinger's testimony had already been placed in front of the jury, through the questioning of him by both the prosecuting attorney and the defense attorney. In fact, the court reporter was not all that clear as to what Bellinger's testimony had been, and his recollections were no more helpful than the direct and cross examination of Bellinger had been. We hold that the error in allowing the court reporter to testify was harmless and did not contribute to appellant's conviction.

3. The name of one of the witnesses for the state was inadvertently left off the witness list furnished appellant. The name of the witness was furnished appellant's counsel the night before the trial, and he interviewed the witness prior to his being called to the stand. The trial judge allowed the testimony stating that "I am going to permit him to testify, but in the event he needs more time to call him back later on for examination after he hears the testimony, I will be glad to give you that chance to call him back and to have further extensive cross-examination or more time, but I think it is discretionary with the Court, that the Court permit the State to put the witness up, and I will grant defense counsel as much leeway in his examination ... as would be reasonable ... ." Since the purpose of Code Ann. § 27-1403 was satisfied by the trial court's effort to afford the appellant other forms of relief beside excluding the

witness' testimony altogether, we hold that there was no error in allowing this witness to testify. See *Butler v. State,* 139 Ga. App. 92 (227 SE2d 889) (1976).

4. A witness testified that he had spoken to appellant about needing a set of scales to sell to a friend. Appellant allegedly told him he knew of a set in the back of a car parked off of a nearby road. Appellant took the witness to the car, which was the victim's car, and broke into the rear window with his fist and took the scales. Appellant objected to this testimony on the basis that it referred to the commission of a separate offense unrelated to the subject crime of his trial and improperly placed his character in issue. See *Money v. State,* 137 Ga. App. 779 (224 SE2d 783) (1976). Proof of a separate offense is generally not admissible unless it is logically connected to the commission of the crime charged so that "proof of one tends to prove the other, i.e., where the extraneous crime tends to prove malice, intent, [or] motive . . ." 137 Ga. App. at 781. Evidence of the occurrence with the scales is certainly logically connected to the crime charged, particularly the charge of concealing a death, since knowledge of the whereabouts of the victim's car three days after the murder would tend to prove at least one, or all three counts of the indictment against appellant. This testimony had sufficient probative value to outweigh any potential prejudice to the defendant from having his character allegedly placed in issue.

Additionally, there is no merit to the contention that this testimony was the uncorroborated testimony of an accomplice, since sufficient corroborative testimony was presented.

In conclusion, we find that the evidence presented was sufficient to convince a rational trier of fact of the guilt of the appellant beyond a reasonable doubt. See Jackson v. Virginia, —- U.S.—- (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents to Divisions 1 and 2 and the judgment.*

ARGUED SEPTEMBER 19, 1979 — DECIDED JANUARY 8, 1980.

*Winship E. Rees,* for appellant.

*Arthur K. Bolton, Attorney General, W. Davis Hewitt, Staff Assistant Attorney General, Tom Charron, District Attorney, Stephen J. Schuster, Assistant District Attorney,* for appellee.