64805. ROBINSON v. THE STATE.

QUILLIAN, Chief Judge.

The defendant, Wilbur Robinson, appeals his conviction of armed robbery. *Held:*

1. Three witnesses identified Robinson as a participant in an armed robbery of the Handy Pantry on April 25, 1981. This evidence is sufficient to enable any rational juror to find the existence of the offense of armed robbery beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. When the trial recessed for lunch, a deputy sheriff waited until the jurors were departing before handcuffing the defendant and taking him to lunch. The assistant district attorney saw the jurors were still in the hallway and spoke to the deputy sheriff who directed

the defendant into the jury room. Two female jurors had waited in the jury room to use the restroom. As soon as the deputy saw the two jurors he withdrew the defendant from the jury room and those jurors departed. Counsel for the defendant moved for a mistrial.

Only one of the jurors saw the defendant was in handcuffs. However, she told another juror what she had seen. Both jurors were examined individually, out of the presence of the other jurors. The witness that saw the defendant in handcuffs said this did not shock or frighten her and would not in any way influence her in this case. She was asked if she expected the defendant to be in handcuffs and responded in the affirmative. The juror who was told what had happened stated that the incident did shock her — "a little bit . . ." "The shocking thing was that he was coming into the jury room and in handcuffs." She also stated she would expect the defendant to be in handcuffs and it would not prevent her from giving the defendant a completely fair and impartial trial.

A trial judge is responsible for the security of his courtroom, but a defendant has a right to be tried in an atmosphere free of partiality and innuendo created by the use of excessive security precautions. *Allen v. State,* 235 Ga. 709, 711 (221 SE2d 405). However, it is also within the trial court's discretion to instruct police authorities to use whatever restraint is necessary to secure the defendant outside the courtroom and during transportation to and from the jail. Id. at 712. "Absent justifying circumstances, the defendant normally should not be seen by the jury handcuffed in the courtroom or courthouse. However, where one or more jurors by chance see the defendant in handcuffs outside the courtroom, it is not error to deny a motion for mistrial." *Gates v. State,* 244 Ga. 587, 593 (261 SE2d 349). Thus, the mere fact of seeing an indicted accused in handcuffs — not in the courtroom, as in the instant case, is not grounds for an automatic mistrial, but is addressed to the sound discretion of the trial court. *Carter v. State,* 155 Ga. App. 840, 841 (273 SE2d 417); *Morris v. State,* 228 Ga. 39, 51 (184 SE2d 82); *Brand v. Wofford,* 230 Ga. 750 (6) (199 SE2d 231); *Moore v. State,* 240 Ga. 210 (3) (240 SE2d 68). In *Howard v. State,* 144 Ga. App. 208 (8) (240 SE2d 908), where the jurors had seen the defendant in handcuffs while being taken to lunch and the court examined the jurors who stated it would not influence their verdict — this court found no abuse of discretion of the trial court in denying a motion for mistrial. We find no abuse of discretion in the instant case.

3. Defendant alleges the trial court erred in denying his motion for mistrial following "a post-indictment courtroom lineup without counsel" which was conducted by the District Attorney. The facts gleaned from the trial court's investigation of this matter reveal:

Following indictment, but prior to trial, the defendant and several other accused were brought to the courtroom and seated in the jury box. This was apparently an "arraignment calendar." One witness who was under subpoena for the trial was present in the courtroom. The assistant district attorney stated "in her place" that she did not subpoena this witness to the "arraignment calendar." While the defendant was in the jury box the assistant district attorney interviewed the witness and asked her: "Can you identify any of the robbers. I didn't say: Look up there. And she said: Yeah, that one right up there, and pointed to the defendant. I did not conduct a lineup . . . I interviewed a witness. I state in my place I asked her what she did. I had to conduct my interview because I had been unable to reach her other than through her great aunt . . . leaving messages. And I sat out there on the bench discussing the case in its entirety . . . I asked: How long did you stay there? The specific thing was: Can you identify any of the robbers, and she said yes there is one sitting there."

While the witness was on the stand, the fact that she had identified defendant at an earlier date in another courtroom was revealed. She stated that her mother asked her if she saw "one of the people who robbed the store, and I said yes." The defendant was in the jury box at that time with several other black males. The judge called his name and he stood up, but she had identified him to her mother before the judge called his name. The court recalled the witness after the motion for mistrial was made and questioned her as to the sequence of events. The witness stated that she was first questioned by her mother as to the identity of the robber and pointed him out. Then the judge called the defendant's name and he stood up. After that she was questioned by the assistant district attorney and pointed him out again. The court was very careful in determining that her first identification — before the defendant's response to the judge calling his name, was based on seeing him during the robbery. She was "positive about that."

United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) established the rule that a post-indictment pretrial corporeal identification procedure was a critical stage in a criminal prosecution which triggered an accused's Sixth Amendment right to counsel. In Stovall v. Denno, 388 U. S. 293, 302 (87 SC 1967, 18 LE2d 1199) the Supreme Court stated that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . ." "The 'central question,' however, was 'whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive.' " Manson v. Brathwaite, 432 U. S. 98, 106 (97 SC

2243, 53 LE2d 140). Our own Supreme Court stated it better: " 'Even if the pre-trial identification is "tainted" the in-court identification is not constitutionally inadmissible if it does not depend upon the prior [suggestive] identification but has an "independent origin." ' " *Code v. State,* 234 Ga. 90, 99 (214 SE2d 873).

First, we do not find that this was a line-up. It was not an officially orchestrated identification procedure conducted by the police or the prosecutor for the primary purpose of identification. *Prater v. State,* 148 Ga. App. 831 (7) (253 SE2d 223); *McClesky v. State,* 245 Ga. 108, 110 (263 SE2d 146). Secondly, it apparently was an arraignment as counsel was present — even though it was stated that she was "in-and-out" of the courtroom. It is highly probable that counsel was present when the judge called the defendant's name at arraignment. Nevertheless, pretermitting the issue of whether this was a line-up at which counsel was required, if the identification by the witness had an "independent origin" it is not reversible error that counsel was not present or that the procedure used was impermissibly suggestive. *Prater v. State,* 148 Ga. App. 831 (7), supra; *Foster v. State,* 160 Ga. App. 326 (287 SE2d 323). In *Foster* the witness was asked to go into a courtroom and attempt to identify her assailant from among the persons present. She identified the defendant, who was seated in a jury box along with five other defendants. It was determined "the witness had ample opportunity to observe the defendant at the time of the commission of the offense" and that "the trial court's determination that her identification at trial was based on an 'independent origin' rather than upon any irregularity in the pre-trial identification procedure" was supported by the record. 160 Ga. App. at 327. In *Prater,* the prosecutor suggested to one witness that if he attended a "court proceeding" that he might be able to identify the man who had robbed him. The witness went into the courtroom and saw "eight to ten men . . . scattered about the room; he immediately recognized two men who had robbed [him], and he pointed them out to a deputy sheriff who was present. One was identified as [the defendant]." 148 Ga. App. at 841. This court concluded that this was not a line-up to which the right-of-counsel attached and the circumstances were free from impermissible suggestiveness. 148 Ga. App. at 842.

Under the facts of the instant case, we need only determine that the record supports the finding of the trial court that the witness "had an ample opportunity to observe the defendant at the store. Her testimony . . . is that is what she based her identification on" and even if this was a line-up and counsel was absent "the identification of the defendant by [the witness] was, I find, based on an independent

origin rather than upon any irregularity, and consequently is admissible." This enumeration is without merit.

4. We find no error in the determination of the trial court that the witness Patterson, a polygrapher intern for the GBI, possessed sufficient expertise in his specialty to qualify as an expert. " 'It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert.' *Barrow v. State,* 235 Ga. 635, 639 (221 SE2d 416)." *Griggs v. State,* 146 Ga. App. 694 (2) (247 SE2d 219).

5. The polygrapher composed 10 questions to be answered by the defendant. One of the controlled questions was: "Prior to this year, other than what you have been convicted of, have you every robbed . . . ?" Counsel objected before the question could be completed. It was not answered. A controlled question is required in each polygraph examination to evaluate a response to a relevant question. The court excluded the answer and instructed the jury that it was a controlled question, there is no evidence that this defendant has ever been convicted of any crime, and to disregard the question in their deliberations. We find no reversible error in the procedure followed. The jury was instructed to disregard. In view of the positive identification of the defendant as a participant in the robbery, it is highly probable that this extraneous unanswered question did not contribute to the conviction. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869); *Hamilton v. State,* 239 Ga. 72, 76 (235 SE2d 515); *Lahr v. State,* 239 Ga. 813 (5) (238 SE2d 878).

6. We have thoroughly examined the remaining enumerations of error relating to the charge and find no merit to any of them.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED OCTOBER 18, 1982 —
REHEARING DENIED NOVEMBER 12, 1982.

*Louise T. Hornsby,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Carole E. Wall, Assistant District Attorneys,* for appellee.