## A93A0919. KNIGHT v. THE STATE.
(435 SE2d 276)

BLACKBURN, Judge.

The defendant, Tommy Joe Knight, was indicted for the rape, armed robbery, and kidnapping of a co-worker. Following a trial by jury, he was found guilty of rape and kidnapping, and was acquitted of the armed robbery offense. He was sentenced to life imprisonment for the rape offense and 20 years' imprisonment for kidnapping, to serve consecutively. This appeal followed.

The evidence produced at trial shows that on the morning of April 5, 1991, as the victim walked her routine path to her place of employment, someone suddenly jumped out of the bushes and grabbed her from behind. A struggle ensued between the two as she attempted to get away, during which the assailant wrestled her to the ground and was able to get on her back and place a flannel shirt over her face as they lay on their sides. During the scuffle, she was hit in the face and stabbed with a sharp object underneath her jaw. She was forcibly lead to another section of the wooded area, where she was pushed down on her knees and told to pull her pants down. The victim was threatened with decapitation if she looked back at him. Throughout the attack, the assailant continued to change his voice. Although he subsequently removed the shirt from her head, she was unable to see her attacker because he kept her head toward the ground. He forced her to submit to sexual intercourse with him, and left the scene. After the police were summoned, the victim was taken

to a local hospital where hair and fluid samples were taken from her vaginal area. Approximately three days after the attack, while at work, the victim heard the voice of Knight, a co-worker, and recognized the voice as that of her assailant. She notified the police department of his identity and he was apprehended.

An expert with the Georgia Bureau of Investigation testified that the deoxyribonucleic acid ("DNA") of semen samples taken from the victim matched the genetic profile of DNA in a known sample of Knight's blood. The expert further noted that the probability of selecting an unrelated individual of the population from the same race as Knight who had a genetic profile matching the semen taken from the victim was one in ten billion. Although Knight initially made an oral statement and denied having any sexual activity with the victim, after he was informed of the results of the DNA testing by one of the investigating officers, he admitted having sexual intercourse with the victim in a written statement. In the written statement, he indicated that he had given the victim crack cocaine on the night before in exchange for sex, but they did not engage in any sexual intercourse as agreed. On the morning of the incident, when he asked the victim for his money, she denied owing him any money. As she walked away from him, he grabbed her arm, and she scratched his neck. Thereafter, he slapped her face and told her that she was not going to work until she gave him his money or "something." He maintained that the two proceeded to walk over to some bushes and had sexual intercourse. He denied stabbing the victim and further indicated in his written statement that any scratches around her neck came from his fingernails. At trial, he acknowledged that his written statement was accurate.

Over the objection of Knight, a certified copy of Knight's prior conviction for the 1982 rape of a woman was admitted into evidence as evidence of a prior similar transaction. During the early morning hours of January 1, 1982, Knight raped the woman in a wooded area behind her home. Since the rape victim was deceased at the time of the current trial, the trial transcript of the prior prosecution for rape was read into evidence. According to the victim's trial testimony, she was grabbed from behind and forced down a dirt road on the side of her home toward the wooded lot. Knight initially disguised his voice as he approached the woman, and during the attack, he threatened to kill her if she did anything to resist, as he was armed with a knife. Once they arrived in the wooded area behind her house, he forced her to the ground and removed her pants. He also covered her head with her sweater before he forced the woman to submit to sexual intercourse with him.

1. Knight maintains that the trial court erred in failing to direct a verdict of acquittal as the evidence was insufficient to warrant a con-

viction for rape and kidnapping as a matter of law. We conclude otherwise as " '[a] directed verdict of acquittal should be granted only where "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. . . ." (Cit.)' [Cit.]" *Daniels v. State,* 204 Ga. App. 222, 223 (418 SE2d 790) (1992). A careful review of the entire record in this case reveals that there was ample evidence from which a rational trier of fact could determine the guilt of Knight beyond a reasonable doubt of the rape and kidnapping of the victim. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Greenway v. State,* 207 Ga. App. 511, 512 (1) (428 SE2d 415) (1993); *Melton v. State,* 204 Ga. App. 103 (418 SE2d 428) (1992). Considering the evidence of Knight's guilt of the offenses charged, a directed verdict of acquittal was not warranted.

2. Next, Knight argues that the trial court erred as a matter of law in failing to direct a verdict of acquittal on Count 3 of the indictment which contained the kidnapping charge, because there was a fatal variance between the date contained in the indictment, April 5, 1992, and the evidence produced at trial, which showed that the offense occurred on April 5, 1991. We disagree.

"The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred any time within the statute of limitations." (Citations and punctuation omitted.) *Martin v. State,* 196 Ga. App. 145, 146 (1) (395 SE2d 391) (1990). " '(E)vidence of guilt of an accused is not restricted to the day mentioned in the indictment, but may extend to any appropriate date previous to the finding in the indictment, and within the statute of limitation for the prosecution of the offense charged.' [Cit.] Furthermore, ' "(a)ssuming . . . that there was a variance between the allegata and the probata in regard to the time of the commission of the crime, a motion for directed verdict was not the proper vehicle for obtaining relief. [Knight] should have made a motion for continuance, postponement or recess if surprised by a time variance." (Cit.)' [Cits.]" Id. Accordingly, we find no error with the trial court's denial of Knight's motion for directed verdict on Count 3 of the indictment.

3. Knight additionally assigns error to the trial court's refusal to give his written request to charge on the law of alibi to the jury. However, Knight admitted that he was present at the scene of the crime at the time of its commission. "Thus, alibi was not an issue in the case and '(t)he trial court was not required to give a charge on alibi since it was not authorized by the evidence. (Cit.)' [Cits.]" *Mathis v. State,* 204 Ga. App. 896, 899 (420 SE2d 788) (1992). Accordingly, this enumeration is without merit.

4. Lastly, Knight asserts that the trial court erred in permitting

the state to read into evidence the testimony of the deceased rape victim because the testimony was inadmissible hearsay. As a result of this allegedly harmful error, Knight maintains that he was denied the right of cross-examination and confrontation and was unduly prejudiced.

On the contrary, an exception to the hearsay rule, OCGA § 24-3-10, specifically provides that "[t]he testimony of a witness since deceased . . . which was given under oath on a former trial upon substantially the same issue and between substantially the same parties may be proved by anyone who heard it and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." " '(T)he purpose for requiring that the former testimony had been received in a proceeding having substantially the same issue and parties is to ensure that the party against whom the testimony is now offered had an opportunity adequately to cross-examine the witness at the previous proceeding. (Cits.)' *Prater v. State*, 148 Ga. App. 831, 836 (253 SE2d 223) (1979)." *Vanhouten v. State*, 193 Ga. App. 871, 873 (2) (389 SE2d 534) (1989). In *Prater*, supra, we upheld the trial court's admission of testimony of a deceased witness in two prior judicial proceedings as the parties and issues were substantially the same, and "[a]t the commitment hearing and the extradition hearing Prater had been represented by counsel who had, and took advantage of, the opportunity to cross examine [the deceased witness]." Id. at 839-840. In *Vanhouten*, supra at 873, we noted that "[t]his rule does not demand that all the issues or parties be the same but requires only that the issue on which the testimony was offered in the first suit be the same as the issue upon which it is offered in the second. [Cit.]" However, unlike in the present case the state in *Vanhouten* did not have the right to cross-examine the deceased witness in the prior administrative hearing and the issue for which the testimony was offered in the administrative hearing was not the same as that for which the defendant was being tried. As a result, in *Vanhouten*, we found that the trial court's refusal to admit the transcript of the testimony of the deceased witness was not erroneous.

In the case sub judice, as Knight was the defendant in the prior action prosecuted by the State of Georgia, and in fact, by the same prosecutor, "[w]e do not hesitate to conclude that the parties were substantially the same." *Prater*, supra at 836. Inasmuch as the testimony of the deceased witness in the prior proceeding was offered to establish the facts of the rape offense in both the prior proceeding and the trial below, albeit as evidence of a similar transaction, we must further conclude that the issues are substantially the same, as "there is sufficient similarity so that there was previously an adequate opportunity for cross examination. The requirement of identity of is-

sues, is like the rule about parties, merely a means of fulfilling the policy of securing an adequate opportunity of cross examination." (Citation and punctuation omitted.) Id. at 837. Consequently, as the parties and the issues in both proceedings are substantially the same, and Knight was represented by counsel in the previous proceeding, who, contrary to his assertions, had and took advantage of the right to cross-examine the deceased witness, we must conclude that the statutory requirements have been met, and the trial court properly admitted this testimony. Accordingly, this enumeration is also without merit.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 20, 1993.

*Andrews & Seery, Stephen H. Andrews, S. Andrews Seery*, for appellant.

*H. Lamar Cole, District Attorney, Mark E. Mitchell, Assistant District Attorney*, for appellee.