## 77039. BAXTER v. THE STATE.
(373 SE2d 834)

SOGNIER, Judge.

Bradley Robert Baxter was convicted on two counts of armed robbery, and he appeals.

1. In his first enumeration of error, appellant challenges the convictions on the general grounds. Construed in the light most favorable to the State, see *Hosch v. State*, 185 Ga. App. 71 (1) (363 SE2d 258) (1987), the record reveals that the first armed robbery occurred at a drugstore in DeKalb County on the afternoon of March 26, 1987. The store's pharmacist testified that a white male wearing a lightweight jacket, jeans, and a motorcycle helmet approached her behind the pharmacy counter, pointed a gun at her, and demanded certain narcotics. She opened the narcotics cabinet, and the perpetrator fled the store with $200 worth of drugs. Two construction workers who had been working nearby testified they saw a white male drive up on a motorcycle, go into the drugstore, and then run out of the store a few minutes later carrying a small package. The second robbery occurred approximately fifteen hours later at a service station across the street from the drugstore. That victim stated he was robbed by a thin white male dressed in jeans and a jacket, wearing sunglasses and a cap, who asked for Kool cigarettes and then pulled out a gun and demanded cash, which the victim gave him. Lt. Roland Hardy of the DeKalb Police Department arrived at the scene shortly after the second robbery, and upon searching a nearby lot found the hat and glasses the victim had described. He then parked across the street and saw appellant, a slender white male wearing jeans, a jacket, and a helmet, emerge from a parking lot pushing a motorcycle. Lt. Hardy stopped and frisked appellant, and found a gun, a pack of Kool cigarettes, and some cash. Hardy then arrested appellant. A subsequent search of the motorcycle yielded additional cash in substantially the amount and denominations taken from the service station. Although the victim of the service station robbery was too distraught to make a definitive identification of appellant at the scene, he did identify the clothing and then identified appellant at trial. The pharmacist identified appellant from a photographic lineup and again at trial. We conclude this evidence was sufficient to authorize the jury to convict appellant on two counts of armed robbery under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant next enumerates as error the trial court's denial of his motion to suppress evidence obtained when Lt. Hardy stopped appellant after the service station robbery. Appellant first argues the initial stop was improper because the officer was operating on a mere hunch rather than an articulable suspicion that appellant was suspected of any wrongdoing. The record reveals that prior to stopping

appellant, Lt. Hardy knew that an armed white male wearing a hat, jacket, and sunglasses had just robbed the station and fled on foot in a particular direction. Lt. Hardy also knew that a store across the street had been robbed earlier in the day by a white male armed with a gun who left the scene on a black motorcycle. Given that he had found a hat and glasses in a nearby lot and that he had seen no other vehicles in the vicinity since he arrived, when Lt. Hardy saw appellant, a white male wearing a jacket and riding a black motorcycle, he decided to stop appellant.

" 'Although an officer may conduct a brief investigative stop of a vehicle, see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry*, supra, and are invalid if based upon only "unparticularized suspicion or 'hunch,' " [Cit.].' [Cit.] 'An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. [Cits.]' [Cit.]" *Evans v. State*, 183 Ga. App. 436, 438 (359 SE2d 174) (1987). This particularized suspicion must be based on the totality of the circumstances, which includes objective observations, information from police reports, consideration of the methods of operation of the type of lawbreaker at issue, and inferences and deductions drawn from the officer's training and experience. Id.

Applying these principles to the instant case, we conclude that Lt. Hardy had sufficient articulable suspicion to authorize a brief stop of appellant. He matched the description of the perpetrator except for the absence of a hat and glasses, but Lt. Hardy already had found those items. Appellant appeared from the same general direction in which the perpetrator had fled. Given Lt. Hardy's testimony that he was aware of appellant's similarities to both the service station and drugstore suspects and that he knew some lawbreakers tend to concentrate their efforts in familiar geographic territory, we find that Lt. Hardy reasonably concluded that appellant, the first person he had seen on the street since his arrival, could have been the perpetrator of the two robberies.

Appellant next maintains the stop was a pretextual stop of the type disapproved in *Tarwid v. State*, 184 Ga. App. 853 (1) (363 SE2d 63) (1987). In *Tarwid*, the officer stopped the vehicle based on evidence of drunk driving, but continued to detain the occupants even after he concluded the driver was not intoxicated because a fellow officer suspected them of drug trafficking. Id. at 853-854. Unlike the officer in *Tarwid*, Lt. Hardy did not stop appellant under the pretext

of investigating for one crime while he in reality sought evidence of commission of a greater offense. Instead, he knew an armed robbery had been committed and reasoned that appellant was a suspect in that crime. Based on the totality of the circumstances, we find no pretextual stop occurred.

Appellant's final argument, that the arrest and search were illegal, is similarly without merit. Because he knew the suspect was armed and he saw a bulge under appellant's arm, Lt. Hardy was authorized to frisk appellant. *Butts v. State,* 149 Ga. App. 492 (2) (254 SE2d 719) (1979). Once he discovered the gun and thus lawfully arrested appellant for carrying a concealed weapon, the subsequent search of his person and motorcycle was permissible. OCGA § 17-5-1 (a), (b).

3. Appellant next objects to the in-court identification of him by the robbery victims, contending the drugstore victim's identification was irreparably tainted by the unduly suggestive pretrial photographic lineup, and the initial showup identification made by the second victim resulted in a substantial likelihood of irreparable misidentification. These two enumerations are meritless because appellant did not object to the in-court identifications at trial and thus waived his right to raise the issue on appeal. *May v. State,* 159 Ga. App. 565, 566 (2) (284 SE2d 70) (1981). Moreover, even if objection had been made, the trial court found the pretrial identifications were not impermissibly suggestive, and we do not find that decision to be clearly erroneous. See *Bennefield v. Brown,* 228 Ga. 705, 706 (187 SE2d 865) (1972) (in-court identification admitted when "prompt, on-the-scene" showup identification was made); *Lynch v. State,* 158 Ga. App. 643, 644 (281 SE2d 640) (1981) (subsequent in-court identification not tainted by prior photographic identification when, as here, victim had ample opportunity to observe perpetrator, brief period of time elapsed between crime and identification, and certainty of victim's selection of photograph was apparent).

4. In his final enumeration of error appellant contends the trial court erred by refusing to declare a mistrial when a juror saw appellant being escorted by deputies during a break. The record reveals that appellant, who was dressed in a suit and was not handcuffed, was taken to the jury rest room by three deputies, who then stood between appellant and a juror when she started to enter the jury room.

Although a defendant has the right to be free of the "atmosphere of partiality" created by the use of excessive guards or shackles in the courtroom, *Allen v. State,* 235 Ga. 709, 711 (221 SE2d 405) (1975), "the mere fact of seeing an indicted accused in [custody]—not in the courtroom, as in the instant case, is not grounds for an automatic mistrial, but is addressed to the sound discretion of the trial court. [Cits.]" *Robinson v. State,* 164 Ga. App. 379, 380 (2) (296 SE2d 225)

(1982). The trial judge questioned the juror to ascertain whether the incident caused her to harbor any prejudice toward appellant, and the juror stated she could be fair. Given these circumstances, we find no error in the denial of the motion for mistrial. See *Carter v. State*, 155 Ga. App. 840, 841 (273 SE2d 417) (1980).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 28, 1988.

*Mark J. Kadish, James J. McGinnis*, for appellant.

*Robert E. Wilson, District Attorney, Barbara B. Conroy, Robert M. Coker, Assistant District Attorneys*, for appellee.