### A97A0536. BURRELL v. THE STATE.
(483 SE2d 679)

ELDRIDGE, Judge.

Appellant Kini Tollison Burrell appeals his March 1995 conviction for driving under the influence of alcohol ("DUI"), in violation of OCGA § 40-6-391 (a) (1), and failure to yield to an emergency vehicle, in violation of OCGA § 40-6-74.

At approximately 9:30 p.m. on December 12, 1994, Sergeant Chris Butler of the Clayton County Police Department stopped his patrol car at a red traffic light on Highway 138 and Jonesboro Road in Jonesboro, Clayton County. At the time, Sergeant Butler was

responding to a non-emergency call; his blue lights and siren were not activated. Stopped in the lane next to Sergeant Butler's patrol car was Amy Barker, who was traveling in the same direction as Sergeant Butler with her two small children as passengers.

When the traffic light turned green, Sergeant Butler turned left into the right-hand (curb side) lane of Jonesboro Road. Sergeant Butler testified that, upon driving through the intersection and under the traffic lights, he could see that the traffic light for drivers on Jonesboro Road was still red. At the same time, Barker was briefly distracted by her six-year-old daughter in the back seat, who had unbuckled her seat belt in order to retrieve a doll from the floorboard. After confirming that her daughter's seat belt was secured and noticing that Sergeant Butler had made his turn, Barker proceeded through the intersection. However, she immediately slammed on her brakes when she concurrently heard and saw appellant's car entering the intersection on Jonesboro Road. Both cars screeched to a halt, narrowly avoiding a collision between appellant's car and the passenger side of Barker's vehicle.

Sergeant Butler, who had just turned left through the intersection, heard "a loud, squealing, screeching type noise," looked in his rear-view mirror, and saw both cars stopped in the middle of the intersection. Sergeant Butler watched appellant's car as it passed through the intersection and proceeded down Jonesboro Road in the left-hand (inside) lane. At the same time, Barker drove her car straight through the intersection and continued on Highway 138.

After appellant's car passed Sergeant Butler on Jonesboro Road, Sergeant Butler moved to the left-hand lane behind appellant and turned on his blue flashing lights. Sergeant Butler testified that his intention was to stop appellant for running a red light. After a few moments, when appellant did not pull over to the right, Sergeant Butler activated his siren. After "several tenths of a mile," appellant finally drifted to the right-hand lane and briefly stopped. However, when Sergeant Butler stopped his patrol car behind appellant, appellant suddenly "made [a] jerking motion" with his car, "shooting out making [a] right" turn onto a side road. Anticipating that appellant was attempting to escape, Sergeant Butler quickly followed. Shortly thereafter, appellant stopped in the center of the street, and Sergeant Butler parked his patrol car behind appellant.

Sergeant Butler approached appellant's car and asked to see appellant's driver's license; appellant instead mistakenly gave the police officer his Visa charge card. Sergeant Butler could see appellant's driver's license in his wallet, and told appellant where the license was so he could retrieve it. Sergeant Butler noticed a mild odor of alcohol on appellant's breath, which became stronger when the officer moved closer to retrieve appellant's keys. The officer also

noticed that appellant's eyes were glassy, his reactions to questions and his other mannerisms were slow, and his speech was slurred. When appellant exited the car, the officer observed that appellant moved slowly and used the car for support while walking. Based on his observations, Sergeant Butler testified that he believed appellant was "heavily intoxicated . . . definitely a less safe driver."

During the trial, Barker testified that, after passing through the intersection following the near-collision with appellant's vehicle, she continued straight on Highway 138. However, she became increasingly enraged by appellant's actions in almost colliding with the passenger side of her car, where both of her children were seated. She turned her vehicle around, turned right at the intersection of Highway 138 and Jonesboro Road, and located Sergeant Butler and appellant parked on the side street. Barker parked behind the police officer, got out of her car, and approached appellant's vehicle; appellant was still seated in his car. Barker testified that she wanted to confront appellant and show him "what he almost . . . killed." However, Sergeant Butler instructed Barker to return to her car, telling her that he did not "know what [appellant] might do you [her]," that appellant was "bad drunk," "didn't know what was going on," and "was completely out of it," and that the officer "doubt[ed] very seriously [appellant] can walk back there" to Barker's car. Sergeant Butler testified that he was concerned about his safety and the safety of Barker, since appellant was not in custody or otherwise restrained. Barker testified that, before returning to her car, she was able to see the appellant from the side and that he had "his head thrown back over his seat and [was] lounged out in the front seat," with "his eyes closed, and his mouth was hung open . . . he couldn't hold his head up." Barker also testified that, based upon her previous experience working in a bar, she came to the conclusion that appellant was intoxicated.

Appellant was arrested at the scene and charged with DUI, failure to yield the right-of-way to an emergency vehicle, and running a red light. Following a jury trial, appellant was found guilty of the DUI and failure to yield charges; he was acquitted of the charge of running a red light. Appellant's original appeal was dismissed by this Court as untimely, but he was granted an out-of-time appeal in September 1996.

1. In his first enumeration of error, appellant asserts that the trial court erred in denying appellant's motion for a directed verdict on the DUI and failure to yield charges.

(a) Regarding the DUI conviction, "[o]n appeal [from a conviction,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and

does not weigh the evidence or determine witness credibility." *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). In the case sub judice, evidence was presented that appellant narrowly avoided a collision with another automobile; initially failed to stop or pull over when Sergeant Butler followed him with flashing blue lights and siren activated; failed to remain stopped after pulling over to the curb; suddenly accelerated, making a "jerking" right-hand turn onto a side street; and, after being pursued by Sergeant Butler, stopped in the middle of the street, as opposed to pulling over to the right curb. Further, Sergeant Butler testified that appellant had "glassy eyes," slurred speech, slow reactions and mannerisms, and an odor of alcohol. Appellant also mistakenly produced a Visa charge card instead of a driver's license and used the car for support when exiting his vehicle and walking away from the car. Finally, a second witness, Barker, testified that, based on her experience of working in a bar for a year, appellant appeared to be intoxicated as he sat "lounged out" in his car, eyes closed, head back, and mouth "hung open." She also testified that Sergeant Butler warned her to stay away from the appellant, because he was "bad drunk" and "completely out of it."

Appellant cites to *Clay v. State*, 193 Ga. App. 377 (387 SE2d 644) (1989), to support his assertion that Sergeant Butler's opinion that appellant appeared intoxicated, without more, is insufficient to support the jury's verdict that appellant was driving under the influence.[1] However, in the case sub judice, Sergeant Butler's observations of appellant's physical status and his subsequent determination that appellant was intoxicated were supported by additional evidence that appellant drove erratically following his near-collision with Barker, including appellant's delay in pulling over after Sergeant Butler turned on his police car's flashing blue lights and siren; appellant's brief stop and sudden acceleration, followed by a right turn; and appellant's eventual stop in the middle of the street. Such physical evidence, combined with Sergeant Butler's observations and Barker's testimony, is sufficient from which a rational trier of fact could conclude beyond a reasonable doubt that appellant was under the influence of alcohol to the extent that he was a less safe driver. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) However, appellant's conviction for failure to yield the right-of-way to an emergency vehicle under OCGA § 40-6-74 (a) must be reversed. The Code section provides that, following the approach of an emergency vehicle utilizing audible and visual signals, "the driver of every other vehicle shall yield the right of way" until the emer-

---

[1] Sergeant Butler's testimony that appellant refused to submit to field sobriety testing was excluded from trial on constitutional grounds.

gency vehicle "has passed. . . ." OCGA § 40-6-74 (a).

"To violate the statute, an individual must obstruct the roadway, thereby preventing an emergency vehicle from proceeding upon its route in pursuit of a fleeing suspect or other emergency. The evidence is uncontroverted that the officer was pursuing [appellant] rather than seeking to pass him. The officer's stated purpose was to *stop* [appellant] for [a traffic violation]. Therefore, the State has failed to prove the most fundamental element of the statute charged: that [appellant] obstructed the roadway and prevented the officer from *passing* him. In light of this fact, [appellant's] conviction for failing to yield to an emergency vehicle must be reversed. While the evidence would support a charge that [appellant] was attempting to flee from the officer under OCGA § 40-6-395, the [appellant] was not so charged." (Emphasis in original.) *Jackson v. State*, 223 Ga. App. 27, 28 (1) (477 SE2d 28) (1996).

2. In appellant's second enumeration of error, he asserts that the trial court erred in not granting the appellant's request for a mistrial following the solicitor's reference to a juror by name during closing argument. While we agree with appellant that the solicitor's remark was inappropriate, we disagree that the refusal to grant a mistrial on that basis was reversible error. Further, we find that appellant waived his right to consideration of this issue by failing to renew his objection after the trial court ruled on his motion for mistrial.

During closing arguments, the solicitor mentioned the name of a juror who admitted during voir dire that he worked in a package liquor store. Specifically, the solicitor said, "You can look at somebody who's had too much to drink and you can tell. Mr. Lee [the juror] can tell you that because every day in his job he sees people that he can't sell alcohol to because they don't — they've had plenty. . . ." At that time, appellant objected and made a "conditional motion for mistrial," asking the trial court to "keep it under advisement until we see what the jury does with this case." However, appellant stated that he did not want to waive his motion and stated that "[i]f the Court has any doubt about doing it [considering the motion] conditionally I would just ask that it [the mistrial] be granted now because that was absolutely inappropriate and corrective instructions are not going to overcome that highly inappropriate use of a juror's name and talking about his profession. . . ."

In *Snider v. State*, 200 Ga. App. 12, 14 (6) (406 SE2d 542) (1991), this Court held that " '[w]hen improper argument is made to the jury, it is necessary, in order to make the alleged error the basis for appeal, that opposing counsel, during the trial, properly object to the argument, invoke the ruling or instruction of the court, and if dissatisfied with the actions taken to renew the objection and move for mistrial. (Cits.)' *Epps v. State*, 168 Ga. App. 79, 81 (4) (308 SE2d 234)

(1983)."[2]

In the case sub judice, appellant originally requested a "conditional mistrial," apparently hoping to preserve his motion while hedging his bets on a possible acquittal by the jury. However, counsel invoked a ruling of the court when he moved for a mistrial "[i]f the Court has any doubt about doing it conditionally." Appellant requested no cure, other than a mistrial, for the alleged error. Once the trial court denied the motion and determined, sua sponte, that curative instructions would only "ring the bell twice," appellant did not renew his motion for a mistrial. Under such circumstances, the motion has been waived. *Snider*, supra at 14.

*Judgment affirmed in part and reversed in part. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 6, 1997.

*Donald C. Turner*, for appellant.

*Keith C. Martin, Solicitor, Clara E. Bucci, Assistant Solicitor*, for appellee.

---

[2] Contrary to appellant's assertion, this matter does not fall under OCGA § 17-8-75, as it does not involve "prejudicial matters which are not in evidence." See also *Thompson v. State*, 150 Ga. App. 567 (258 SE2d 180) (1979).