A98A0499. COLLINS v. THE STATE.
A98A0500. STEVENS v. THE STATE.
(502 SE2d 498)

ANDREWS, Chief Judge.

John Walter Collins and Anthony Shields Stevens appeal from the judgments entered on their convictions of armed robbery after a joint jury trial. The appeals are considered together.

1. Both defendants, in their second enumerations, contend the trial court erred in allowing in-court identifications of them by the robbery victims. They claim these identifications were tainted by an impermissibly suggestive showup.

" 'There is no per se exclusionary rule applied to pre-indictment confrontations. *Yancey v. State*, 232 Ga. 167, 169 (205 SE2d 282) (1974). Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. The totality of the circumstances must

be viewed to determine if there is a likelihood of misidentification which offends against due process and the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation. *Towns v. State*, 136 Ga. App. 467, 468 (1) (221 SE2d 631) (1975), applying the factors enumerated in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972).' (Citations and punctuation omitted.) *Ferguson v. State*, 221 Ga. App. 415, 418 (471 SE2d 528) (1996)." *Flores v. State*, 228 Ga. App. 152, 153 (491 SE2d 86) (1997).

Here, around 5:00 a.m. on October 3, 1996, Buiza, assistant manager of an Athens Majik Market, and Silva were alone in the Majik Market. Silva, whose shift was to begin at 6:00 a.m., had come in early to do some paperwork while Buiza was putting out newly arrived magazines near the front window. Buiza was stooping down in front of the magazine rack when she heard a commotion, which she initially thought was students playing a joke, since the store was near a university. As she stood up, however, she realized there was a man, later identified as Stevens, wearing pantyhose over his face and holding a gun on Silva at the cash register. Buiza backed up an aisle and hid behind a lottery station so she could see the activity at the counter. Silva, who was Brazilian, initially did not understand what the robber said, but realized it was a robbery when he saw the handgun. As Silva was attempting to open the cash register, he saw a second man outside the store. This man, later identified as Collins, then entered the store, jumped on the counter, and grabbed money from the register drawer. Silva was told to lie on the floor and he backed away, continuing to face the two men, until he lay down. The gun held by Stevens was within a "hand" of Silva's face during the encounter.

The two men then ran out of the store and right by a window next to where Buiza was hiding. She saw them run by the window, noted the direction and called the police, telling them the two were running toward a local restaurant. She described the two as young black men, very thin, wearing black clothing, and one had a gun. The man with the gun was wearing long pants and a "thermal type" long sleeve shirt. The other was wearing long black shorts and a black tee shirt. After closing out the register, Silva and Buiza discovered $288 missing.

Officers Rodriguez and Eckert were dispatched to the robbery at 5:13 a.m. and given the description of the two men and the direction they had headed. As they were nearing the Majik Market, they saw two young men matching the description and wearing black pants

and shorts walking hurriedly through a university parking lot and one was carrying a handgun. Officer Eckert immediately turned the marked car around, jumped the curb, and went towards the two men. The car's spotlight was on the two as they ran into a wooded area. The two officers pursued, but fell down an embankment into a creek. They listened for sounds of running and heard none, so they believed the two were hiding in the woods. A police perimeter was set up around the wooded area within three to eight minutes of the officers' entering the woods and a canine unit was called. The dog and handler arrived within 30 to 45 minutes, during which time Officers Eckert and Rodriguez remained near the creek watching. Deputy Phillips and Nero entered the woods and Nero led the officers to Collins, about 20 yards down the creek from where he had entered the woods, curled up on the creek bank. After Collins was taken away, Officer Eckert found $286 in cash stuffed underneath a rock and leaves where Collins had been lying. A loaded revolver with the hammer cocked was found about 15 to 20 feet from where the two men entered the woods.

Officer Gooch was dispatched to the perimeter at 5:38 a.m. and ended up in a back yard about 60 yards from the university parking lot where he noticed a patch of black cloth near a fence and found Stevens hiding. No other foot traffic was seen in the area. Stevens was wearing dark-colored pants and a shirt that looked "grayish, gold" in the dark. Silva had described the shirt worn by the man holding the gun as a "brown underwear shirt" and Buiza said it was a "thermal type." Both said the man who grabbed the cash was wearing black shorts and shirt, as Collins was when arrested.

Collins and Stevens were transported to the Majik Market where Buiza and Silva were separated and asked whether these were the men who robbed them. Officer Rodriguez advised them both that the fact that these two men were in police custody did not mean they were the robbers. Silva identified Stevens at 6:34 a.m. and Buiza identified him at 6:35 a.m. as the man with the gun. Collins was identified by them at 6:37 a.m. and 6:38 a.m. as the second robber. Officer Rodriguez described Buiza and Silva as identifying the men "[a]lmost immediately" upon seeing them. Both victims were firm in their testimony that their in-court identifications were based on their experience in the robbery and not on the showup or later seeing the two men in court. Buiza said she was intent on watching the men, who she believed did not know of her presence in the store, and was "positive" and "absolutely sure" of her identifications. Silva said he got a "good look" at the man with the gun and that he could see Collins outside through the window before he entered the store as well as afterwards when Collins was about one and a half meters from him.

"[P]rompt, on-the-scene confrontations and identifications, though inherently suggestive because of the presentation of a single suspect, [nevertheless] are permissible in aiding a speedy police investigation and that where possible doubts as to identification need to be resolved promptly, such on-the-spot identifications promote fairness by enhancing the accuracy and reliability of identification, thereby permitting expeditious release of innocent subjects." *Bennefield v. Brown*, 228 Ga. 705, 706 (3) (187 SE2d 865) (1972). See also *Davis v. State*, 233 Ga. 847, 849 (1) (213 SE2d 695) (1975); *Flores*, supra.

The trial court's admission of the identification testimony was not clearly erroneous and we find no merit in these enumerations. *Baxter v. State*, 188 Ga. App. 598, 600 (3) (373 SE2d 834) (1988); see *Odim v. State*, 228 Ga. App. 158, 160 (2) (491 SE2d 218) (1997).

2. Collins' third and Stevens' first enumerations of error are that the court erred in denying their *Batson*[1] challenges to three of the state's peremptory strikes.

" 'To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.' (Footnotes omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996)." *Griffeth v. State*, 230 Ga. App. 298, 299 (496 SE2d 309) (1998).

Here, the only information in the record concerning the makeup of the panel from which the jury was struck is Collins' counsel's statement that nine of the twenty-nine jurors were African-American, or thirty-one percent of the panel, and that the State used three of its five strikes on African-Americans, or sixty percent. Pretermitting the issue of whether such a statement is sufficient to perfect the record, see *Sharp v. Fagan*, 215 Ga. App. 44 (1) (449 SE2d 648) (1994) and *Shaw v. State*, 201 Ga. App. 438, 439-440 (1) (411 SE2d 534) (1991), there is no indication in the record of the makeup of the jury which was actually sworn to try the two defendants, as required for a prima facie showing of racial discrimination. *Smith v. State*, 231 Ga. App. 677, 683 (5) (499 SE2d 663) (1998); *Love v. State*, 205 Ga. App. 27 (1) (421 SE2d 125) (1992).

Therefore, there was no error in the court's denial of the challenges. *Love*, supra; *Shaw*, supra.

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

3. Stevens' third enumeration is that the evidence was insufficient.

"'On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]' [Cit.]" *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

So viewed, the evidence, as set out in Division 1, was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jones v. State*, 226 Ga. App. 619, 623 (8) (487 SE2d 371) (1997).

4. Collins contends that the trial court erred in admitting into evidence and playing for the jury a copy of the videotape of the robbery made by the surveillance camera because it was not the original, based on the best evidence rule. OCGA § 24-5-1.

This rule, however, applies only to writings and not to videotapes.[2] *Perkins v. State*, 260 Ga. 292, 295 (7) (392 SE2d 872) (1990); *Smith v. State*, 228 Ga. App. 144, 146 (2) (491 SE2d 194) (1997).

There was no error.

5. Collins' fourth enumeration is that the court erred in not granting his motion for mistrial regarding display to the jury of State's Exhibits #2 and #3, a thermal shirt and pair of black shorts.

When the exhibits were originally tendered, Collins objected to their admission because no chain of custody had been shown.

"'The chain of custody requirement does not apply to distinct and recognizable physical objects that can be identified upon observation. . . .' [Cits.]" *Fields v. State*, 223 Ga. App. 569, 572 (3) (479 SE2d 393) (1996). See also *Brown v. State*, 195 Ga. App. 389, 390 (393 SE2d 514) (1990).

At that time, although the court did not sustain the chain of custody objection, the State was directed to connect up the items with the defendants. Although the prosecutor indicated his intention to do that, the only such evidence was Buiza's testimony that the clothing was substantially similar to that worn by the two robbers. The court, out of an abundance of caution, did not admit the physical items and instructed the jury to consider only the evidence admitted and testimony of witnesses. As reflected in the court's response to the jury's later question during their deliberations, they were to consider testimony about the shirt and shorts, but the clothing had not been admitted into evidence.

---

[2] The foundation required for admission of the videotape was provided by Silva and Buiza. *Phagan v. State*, 268 Ga. 272, 279 (5) (486 SE2d 876) (1997); *Wingfield v. State*, 226 Ga. App. 448, 449 (2) (486 SE2d 676) (1997).

Collins made a motion for mistrial after the State rested its case, contending that allowing the clothing to be displayed to the jury, but not admitted as a result of his objection, was "prejudicial." Pretermitting whether such an objection raises any issue for the trial court, we conclude that Collins has waived this issue by failing to renew his motion for mistrial after the court's initial denial of it and after the court's response to the jury's inquiry involving the same issue. *Maddox v. State*, 227 Ga. App. 602, 604 (2) (490 SE2d 174) (1997); *Burrell v. State*, 225 Ga. App. 264, 268 (2) (483 SE2d 679) (1997).

*Judgments affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED MAY 15, 1998 —
RECONSIDERATION DENIED MAY 26, 1998.

*Kristopher Shepherd*, for appellant (case no. A98A0499).

*Pete, Pete & Associates, Anthony T. Pete*, for appellant (case no. A98A0500).

*Harry N. Gordon, District Attorney, William W. Tanner, Assistant District Attorney*, for appellee.