**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 26, 2021**

# In the Court of Appeals of Georgia

A21A0920. HENDRIX v. THE STATE.

RICKMAN, Chief Judge.

Deiage Hendrix was tried by a jury and convicted of violating a family violence order by having contact with his former girlfriend.[1] On appeal, Hendrix contends that the trial court erred when it allowed a witness not included on the State's witness list to testify, and that without that testimony, the evidence was insufficient to convict him of violating the family violence order. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence presented at trial showed that Hendrix was subject to certain bond conditions that precluded him

---

[1] Hendrix was also charged with family violence simple assault, family violence simple battery, and disorderly conduct, but the jury acquitted him of those offenses.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

from having contact of any form with his former girlfriend. Hendrix's former girlfriend testified that she was not having contact with Hendrix in February 2019 and that she did not recall telling another witness that she had an incoming call from Hendrix while they were having a telephone conversation. The other witness testified that she had a telephone conversation with Hendrix's former girlfriend on February 15, 2019, and that, during that call, the former girlfriend said, "Hold on real quick. Deiage is calling me," and then "clicked over" to talk to Hendrix. Based on that contact, the jury found Hendrix guilty of violating a family violence order.[3]

Hendrix filed a motion for new trial in which he asserted the general grounds and argued that the trial court erred in allowing his former girlfriend to testify over objection. The trial court denied the motion on all grounds.

1. Hendrix contends that the trial court erred in allowing his former girlfriend to testify, over objection, when she was not included on the list of witnesses the State provided to the defense.

When the State called Hendrix's former girlfriend to testify, Hendrix objected on the ground that she was not on the State's witness list. The State acknowledged

---

[3] The charged violation was having contact with his former girlfriend on February 15, 2019.

2

that it had inadvertently left her name off of its witness list, but noted that she was named in the accusation. To remedy the situation, the court allowed Hendrix's counsel to interview her prior to her testimony.

Hendrix argues that the misdemeanor discovery statute prohibited her from testifying. Pursuant to OCGA § 17-16-21, in misdemeanor cases,

> Prior to arraignment, every person charged with a criminal offense shall be furnished with a copy of the indictment or accusation and, on demand, with a list of the witnesses on whose testimony the charge against such person is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant unless the prosecuting attorney shall state that the evidence sought to be presented is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses.

The purpose of this type of statute is to avoid surprise. See *Mowery v. State*, 234 Ga. App. 801, 802 (2) (507 SE2d 821) (1998).

Hendrix cannot validly claim that he was surprised when the State called his former girlfriend as a witness – she was named as a victim in the accusation. See *Byrd v. State*, 216 Ga. App. 510, 512 (4) (455 SE2d 318) (1995) (when a witness' name is contained in the indictment, a defendant cannot validly contend that he was surprised

3

because he lacked knowledge of such witness). In addition, "the testimony of a witness whose name was not supplied to the defendant does not have to be excluded if other means of protecting the defendant and effectuating the intent of the statute can be found." *White v. State*, 253 Ga. 106, 109 (3) (317 SE2d 196) (1984).[4] Here, the trial court allowed Hendrix's counsel to interview the witness prior to her testimony. Under the circumstances, the purpose of OCGA § 17-16-21 was satisfied, and the trial court properly allowed the witness to testify. See *White*, 253 Ga. at 110 (3) ("in instances when the trial court has allowed the defendant an opportunity to interview 'unlisted' witnesses, it has been held that the purpose of the statute has been satisfied, and that the trial court properly allowed the witnesses to testify").

2. Hendrix contends that, without the testimony of his former girlfriend, the testimony of the other witness about his alleged contact with his former girlfriend would have been inadmissible and the evidence would have been insufficient to

---

[4] Although *Byrd* and *White* addressed challenges to witnesses called in alleged violation of former OCGA § 17-7-110, because the language of OCGA § 17-16-21 is identical to that contained in now repealed OCGA § 17-7-110, the case law construing OCGA § 17-7-110 applies even though former § 17-7-110 applied to felonies and misdemeanors. *Brown v. State*, 246 Ga. App. 517, 520 (4) (541 SE2d 112) (2000).

convict him of violating the family violence order.[5] Because we have determined that his former girlfriend was properly allowed to testify, we need not consider this enumeration of error.

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps concurs and McFadden, P. J., concurs fully and specially.*

---

[5] "A person commits the offense of violating a civil family violence order or criminal family violence order when such person knowingly and in a nonviolent manner violates the terms of such order issued against that person, which . . . [r]estricts the person from having any contact, direct or indirect, by telephone, pager, facsimile, e-mail, or any other means of communication with another person, except as specified in such order." OCGA § 16-5-95 (b) (4).

# In the Court of Appeals of Georgia

A21A0920. HENDRIX v. THE STATE.

MCFADDEN, Presiding Judge, concurring fully and specially.

The majority opinion correctly applies *White v. State*, 253 Ga. 106, 109-110 (3) (317 SE2d 196) (1984). *White* is a decision of our Supreme Court, and it is on point and controlling. So I fully concur.

But *White* is part of a line of cases from the Supreme Court and this court that substituted the appellate courts' views of the "intent" or "purpose" of the statute for the statute's plain text. See *White*, supra; *Simmons v. State*, 249 Ga. 860, 861 (4) (295 SE2d 84) (1982); *Cates v. State*, 245 Ga. 30, 34 (3) (262 SE2d 796) (1980); *Hicks v.*

*State*, 232 Ga. 393, 398-399 (207 SE2d 30) (1974); *Butler v. State*, 139 Ga. App. 92, 93 (1) (227 SE2d 889) (1976).

The statue before us, OCGA § 17-16-21, directs that defendants be provided "on demand, with a list of the witnesses[.]" It goes on to specify a severe remedy: "no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant unless the prosecuting attorney shall state that the evidence sought to be presented is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses." Id. *White* and the other cases in its line declined to administer the severe remedy specified in the text of the statute and held instead that "other means of protecting the defendant and effectuating the intent of the statute" can be substituted. *White*, supra at 109 (3).

It is true that the appellate courts are to consider the purpose of statutes. See OCGA § 1-3-1 (a) ( "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. Grammatical errors shall not vitiate a law. A transposition of words and clauses may be resorted to when a sentence or clause is without meaning as it stands.").

But more recent decisions of our Supreme Court affirm and reaffirm that we may not substitute our view of the intent of a statute for its express text. "[I]f the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Deal v. Coleman*, 294 Ga. 170, 173, 751 SE2d 337, 341 (2013). Accord *Seals v. State*, 311 Ga. 739, 740 (1) (860 SE2d 419) (2021) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. That presumption means that we must afford the statutory text its plain and ordinary meaning[.]"); *Green v. State*, 311 Ga. 238, 242 (1) (857 SE2d 199) (2021) (When statutory text is clear and unambiguous, we give the statute its plain meaning "and our search for statutory meaning is at an end.") (citation and punctuation omitted).